Joseph E. Cotterman (Bar No. 013800)
Fay Waldo (Bar No. 026392)
**ANDANTE LAW GROUP, PLLC**
Scottsdale Financial Center I
4110 North Scottsdale Road, Suite 330
Scottsdale, AZ 85251
Phone: (480) 421-9449
Fax: (480) 522-1515
Email: joe@andantelaw.com
Email: fay@andantelaw.com
*Attorneys for HR Betty, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re:** | **Chapter 11** |
| **HR BETTY, LLC, an Arizona limited liability company,** | **Case No.: 2:14-bk-13035-BKM** |
| **Debtor.** | **MOTION TO: 1) SELL ASSETS FREE AND CLEAR OF LIENS—SUBJECT TO HIGHER AND BETTER OFFERS, 2) ASSUME AND ASSIGN CONTRACTS, 3) SET NOTICE, BID, AND SALE PROCEDURES, AND 4) SET SALE HEARING PURSUANT TO 11 U.S.C. §363** |
| | **and NOTICE OF LODGING PROPOSED FORM OF ORDER** |

HR Betty, LLC (the "Debtor"), debtor and debtor in possession in the above captioned bankruptcy case, hereby moves the Court pursuant to 11 U.S.C. §363(b)(1), 363(f) and 365(a) and Rules 2002(a)(2), 6004(a) and 6006, for an order allowing the Debtor to: 1) sell substantially all of its assets (the "Assets") free and clear of liens, subject to higher and better offers; 2) assume and assign the contracts between Debtor and its clients; 3) set notice, bid, and sale procedures; and, 4) set a sale hearing. Specifically, Debtor requests that the Court:

- Enter the "Sale Procedures Order" attached hereto as **Exhibit "B"** (which has been lodged with the Court) approving the bidding, sale, noticing, and assumption and assignment procedures proposed herein;

- Schedule a hearing to consider approval of the sale of substantially all of Debtor's assets, to resolve any and all objections, and to determine the highest and best offer for such sale (the "Sale Hearing");

- Approve the assumption and assignment of the contracts specified herein;

- Approve the sale of substantially all of Debtor's assets free and clear of liens pursuant to either (a) the NatPEO Bid (defined below), or (b) the terms of the highest and best offer presented at the Sale Hearing; and

- Order that all of the foregoing relief shall be effective immediately upon entry of the applicable order granting such relief, and that any stay of such order under Bankruptcy Rules 6004(h) and 6006(d) is waived and shall not be applicable.

## BACKGROUND

1. Debtor filed its voluntary Chapter 11 bankruptcy petition on August 21, 2014 (the "Petition Date"). Debtor continues to manage its affairs as debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. This Court has jurisdiction over this Chapter 11 proceeding and this Motion under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

3. No trustee or examiner has been appointed. An official committee of unsecured creditors has not been appointed.

4. As explained in Debtor's *Motion to Assume Amended and Restated Payroll Servicing Agreement* (the "Assumption Motion") filed with the Court at ECF docket number 18 on September 4, 2014, Debtor is an Arizona limited liability company with its principal place of business in Phoenix, Arizona. Debtor is an industry expert in providing full-service, off-site human resource solutions to business owners allowing its clients to focus on their primary business operations. Debtor focuses its operations on providing

human resources services to its clients (third-party business owners) which eliminates non-revenue generating functions within their organizations. These functions typically include payroll administration, employee benefits, and compliance with all government regulations associated with payroll and human resources administration.

5.    Debtor's asset value consists almost entirely of its existing administrative and payroll services clients. Debtor's financial condition renders it unable to service those client accounts and maintain the value of its assets for creditors without the services and support provided by National PEO, LLC ("NatPEO") pursuant to the Payroll Servicing Agreement described in the Assumption Motion. Long term, Debtor cannot sustain its business operations, which NatPEO is currently maintaining and perpetuating under the Payroll Servicing Agreement pending Debtor's sale of its assets.

6.    NatPEO is a Professional Employer Organization (a "PEO"), which manages various human resources functions so as to relieve small businesses of the administrative burden that would otherwise take time and resources away from their core business function. The services NatPEO provides allow its clients to transfer that administrative burden and thereby eliminate the time and cost of non-productive, but essential processes. NatPEO was founded in 1999 and has risen to become a leading provider of PEO services to hundreds of companies in Arizona and across the United States. With roots deeply embedded in the PEO industry, National PEO has consistently led the curve in innovation, leadership and setting the trend for PEO "Best Practices". NatPEO provides payroll services including payroll administration, tax payment filing, general ledger interface, and ASO services; HR services including employee handbook and policies, labor law compliance, employee training, background screening, and E-verify services; worker's compensation services including policy administration, injury administration, safety compliance and audits, and safety training classes, and; employee benefits services including benefits administration, and COBRA administration.

7.    NatPEO is interested in purchasing all of Debtor's assets. Debtor is unable to sustain its operations and pay employee salaries, and NatPEO has agreed to do so pending

resolution of this Sale Motion. If the Motion is not approved, Debtor will be forced to permanently shut down operations and thereby lose all value that currently exists in its tangible and intangible assets.

8. For these reasons, Debtor seeks authorization to sell its assets to NatPEO while they still have value. In order to ensure that the estate receives the best possible price for Debtor's assets under the circumstances, Debtor will notice the sale to all competitors operating in the Arizona market.

9. NatPEO's purchase offer, which is the basis of the sale motion and the bid against which third parties will be competing, is as follows (collectively the "Desert Bid"):

a. **Assets to be purchased free and clear of encumbrances**:

 i. All furniture, equipment, machinery, computers, and other tangible personal property used or held in the Business;

 ii. All accounts receivable and notes receivable, including refunds and/or rebates due to Seller;

 iii. By assignment, all customer contracts with those ASO and PEO clients listed on Debtor's Schedule G (the "Client Contracts");

 iv. All names, logos, customer data and other information relating to the continuing operation of the Business, and any other intellectual property used primarily in or associated with the Business;

 v. All of Seller's goodwill, including telephone numbers, fax numbers, domain names, websites, software licenses, business records, and correspondence with clients;

 vi. All books and records maintained in connection with the conduct of the Business, including technical support and other information pertaining to the business; and

 vii. All other Assets of Seller incident to or necessary for the conduct of the business, free and clear of all liens and liabilities.

b. **"Purchase Price"**

i. NatPEO will pay $25,000 total, to be paid at the close of the Court-approved sale;

ii. NatPEO's bid will be offset by the amount of advances under any Court-approved DIP funding NatPEO provides to Debtor in this case.

Other terms of the proposed transaction are set forth in the *Agreement For Purchase And Sale Of Business Assets* attached hereto as **Exhibit "A"**. Detailed FF&E and asset listings are available in Debtor's statements and schedules filed in this case and from Debtor upon request to any interested party.

The NatPEO Bid is not contingent on financing. Assets that are *not* included in the NatPEO Bid and will remain with the estate are Debtor's bank checking account balance and its office lease.

**Credit Bids**: There are no secured creditors who might realistically bid for these assets which include the assumption of client contracts. Accordingly, credit bidding is not an issue in this sale.

## PROPOSED SALE PROCEDURES

Based upon the facts above and the legal arguments below, Debtor respectfully requests that the Court issue an order in substantially the form of the Sale Procedures Order attached hereto as Exhibit "B" approving the bid, notice, and sale procedures contained therein. The procedures are designed to ensure that there is a fair and expeditious process under which Debtor can solicit bids for the sale of the Assets and hold an auction thereon in a manner that will ensure that the bankruptcy estate receives maximum value. The following brief summary highlights the material terms contained in the Sale Procedures Order and all parties are referred to the text of the Order for additional information on the proposed procedures[1]:

- Sale Hearing to be set on or before 12/1/14;

---

[1] This summary of procedures is qualified in all respects by reference to the Sale Procedures Order and to the extent there is any inconsistency between this summary and the Sale Procedures Order, the latter shall govern.

- Notice of the Order to be sent to all creditors, parties requesting notice or expressing interest, and all competitors doing business in the Arizona market who would be likely to bid;

- Objection deadline of Fourteen (14) days after service of this Motion for objections related to any portion of this Motion including but not limited to the NatPEO Bid or the proposed assumption and assignment of client contracts;

- The NatPEO Bid is to be the stalking horse bid, and requests for evidence of adequate assurance of future performance from NatPEO to be submitted to Debtor's counsel via email no later than Ten (10) days prior to the Sale Hearing;

- Debtor to conduct the auction at the Sale Hearing to solicit higher and better offers;

- Bid requirements to be met include $5,000 overbid minimums, prohibition on break-up fees, provision of proof of funds and evidence of adequate assurance;

- 14-day waiting period to be waived;

- Court to resolve objections and make final determination of highest and best offer at the Sale Hearing;

- Debtor to upload a sale order approving this sale Motion and setting forth the final sale terms agreed upon at the Sale Hearing.

## BASIS FOR RELIEF

### A. The Sale Procedures Order Should be Entered on the Terms Proposed

11 U.S.C. § 363(b)(1) provides, that "the trustee [or debtor-in-possession], after notice and a hearing, may . . . sell . . . other than in the ordinary course of business, property of the estate," and Rule 6004(f)(1) allows the sale of property outside the ordinary course by public auction. Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the

estate, and therefore are appropriate in the context of bankruptcy sales. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992).

The bidding procedures proposed herein contemplate a fair schedule for conducting the Sale Hearing. The schedule reflects Debtor's current deteriorating financial condition, yet provides a reasonable period for notification to, and due diligence by, any and all competitors in the Arizona marketplace. Accordingly, Debtor requests that the Court approve the bidding procedures, including the timetable for the sale process set forth herein.

**B. The Notice Procedures are Reasonable and Appropriate**

Pursuant to Bankruptcy Rules 2002(a) and (c), Debtor is required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of the Sale Hearing, the terms and conditions of the proposed sale, and the deadline for filing objections. Debtor submits that the notice procedures described above fully comply with Rule 2002 and are reasonably calculated to provide timely and adequate notice of the proposed sale of the Assets, the bidding procedures, and the Sale Hearing to the Debtor's creditors and all other parties in interest that are entitled to notice, as well as any parties who may express a bona fide interest in acquiring the Assets. Based upon the foregoing, Debtor respectfully requests that the Court approve the notice procedures set forth in the Sale Procedures Order, service of which constitutes notice of the Sale.

**C. The Sale of Substantially All of Debtor's Assets Should be Approved**

Ample justification exists for approval of the proposed sale of the Assets. 11 U.S.C. § 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

The decision to sell assets outside of the ordinary course of business is based upon the sound business judgment of the debtor. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153

(D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.*, 2001 WL 1820326, at *10 (Bankr. D. Del. Apr. 2, 2001).

Courts typically consider the following factors in determining whether to approve a sale under 11 U.S.C. § 363: (i) whether a sound business justification exists for the sale; (ii) whether adequate and reasonable notice of the sale was given to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith. *See In re Delaware & Hudson Ry.*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re United Healthcare Sys., Inc.*, No. 97-1159, 1997 WL 176574, at *4 and n.2 (D.N.J. Mar. 26, 1997).

A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

Furthermore, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res.*, 147

B.R. at 656 (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under § 363(b)(1). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, 1989 WL 106838, at *3 (N.D. Ill. 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

Debtor submits that the proposed sale of the Assets is within its sound business judgment. Debtor has considered all alternatives, with the assistance of its advisors, and determined that the sale of its Assets through a § 363 sale process governed by the Sale Procedures Order will maximize the value of the Debtor's estate and is in the best interests of its creditors. As set forth above, Debtor's present financial condition warrants the requested sale process as Debtor lacks the income or financing to fund a protracted chapter 11 case. Thus, an expeditious sale provides the best mechanism to maximize value under the circumstances and is a valid exercise of Debtor's business judgment. Accordingly, Debtor respectfully request that the sale of the Assets to the Successful Bidder be approved.

**D. The Sale of Assets Should be Free and Clear of all Encumbrances**

In the interest of attracting the best bids for the Assets, the Debtors submit that the sale of the Assets should be free and clear of any and all liens, claims, interests, and encumbrances in accordance with 11 U.S.C. § 363(f), with any such liens, claims, interests, and encumbrances attaching to the proceeds of a sale. § 363(f) allows Debtor to sell property "free and clear of any interest in such property of an entity other than the estate" if the entity consents. Here, the entity will either consent or will be deemed to consent if it does not timely object to the sale. Further, any such lien, claim, or encumbrance will be adequately protected by attachment to the net proceeds of the sale, subject to any claims and defenses Debtor may possess with respect thereto. Accordingly, Debtor requests that the

Assets be sold and transferred to the winning bidder free and clear of all liens, claims, interests, and encumbrances pursuant to § 363(f).

**E. Assumption and Assignment of Client Contracts Should be Approved**

*1. Assumption and Assignment Based on Debtor's Business Judgment*

As stated above, in order to facilitate and effectuate the sale of its Assets, Debtor also seeks authority to assume and assign the Client Contracts to NatPEO or the Successful Bidder. 11 U.S.C. § 365(a) and (b) authorize debtors in possession to assume executory contracts or unexpired leases subject to the Court's approval, and requires such debtors in possession to satisfy certain requirements at the time of assumption. Under § 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

A debtor's decision to assume an executory contract or unexpired lease must be an exercise of its sound business judgment for the Court to approve the assumption under § 365(a). *See Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),* 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp*.), 4 F.3d 1095, 1099 (2d Cir. 1993) *see also NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113); *In re III Enter., Inc. V,* 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted), *aff'd*, 169 B.R. 551 (E.D. Pa. 1994).

It is well established that the court should approve a debtor's motion to assume or reject an executory contract if the debtor's decision is based on its "business judgment." *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *8 (D. Del. 2002); *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard"). *See also Phar Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R.

948, 952 (N.D. Ohio 1997) ("Courts should generally defer to a debtor's decision whether to reject an executory contract.") (citation omitted).

To determine if the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. at 239 ("This is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate."). Specifically, a court should find that the assumption or rejection is elected on "an informed basis, in good faith, and with the honest belief that the assumption . . . [is] in the best interests of [the debtor] and the estate." *In re Network Access Solutions Corp.*, 330 B.R. at 75. Under this standard, a court should approve a debtor's business decision unless that decision is the product of bad faith or a gross abuse of discretion. *See Computer Sales Int'l, Inc. v. Federal Mogul (In re Federal Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *Lubrizol Enters. v. Richmond MetalFinishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

In the present case, Debtor's assumption and assignment of the Client Contracts to NatPEO or the Successful Bidder meets the business judgment standard and satisfies the requirements of § 365. The Client Contracts are not in default, and accordingly, no cure amount will be due thereunder. The assumption and assignment of the Client Contracts are necessary for any Successful Bidder to conduct business going forward. Indeed, the primary value in Debtor's assets is the Client Contracts. Because no purchaser would likely take the Assets other than the Client Contracts, the assumption and assignment of the Client Contracts is essential to inducing the highest and best offer for the Assets. Further, upon consummation of the proposed sale of the Assets, Debtor will cease to operate its business and will thereafter have no use for the Client Contracts that are currently the focus of its business. Lastly, the proposed assumption and assignment procedures ensure that all counterparties to the Client Contracts will have sufficient notice of the relief requested and an opportunity to be heard regarding the relief requested herein.

Consequently, Debtor submits that the assumption and assignment procedures are fair and reasonable, and respectfully requests that the Court approve the procedures and

authorize Debtor to assume and assign the Client Contracts to NatPEO or the Successful Bidder.

## 2. Adequate Assurance of Future Performance

A debtor in possession may assign an executory contract or unexpired lease of the debtor if it assumes the agreement in accordance with section 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. 11 U.S.C. § 365(f)(2).

The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992); *In re Rachels Indus., Inc.*, 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990); *see also In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance").

Adequate assurance of future performance may be provided by demonstrating, among other things, the assignee's financial health and experience in managing the type of enterprise or property assigned. *See*, *e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

Pursuant to the Sale Procedures Order, any party may request evidence of adequate assurance from NatPEO according to the procedures set forth therein. As to any other bidders, they are required to provide such assurance at the Sale Hearing upon making a bid. Accordingly, in this regard, the procedures are reasonable and appropriate and support approval of the assumption and assignment of the Truck Leases to Desert or the winning bidder.

## F. Relief Under Rules 6004(h) and 6006(d) Eliminating the 14-Day Waiting Period is Appropriate

Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

The purpose of Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Rules 6004(h) and 6006(d). Although Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day period, the leading treatise on bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, ¶ 6004.10 at 6004-18 (L. King., 15th rev. ed. 2008). The treatise further provides that if an objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

As described above, time is clearly of the essence. Debtor lacks the working capital or access to further financing to rehabilitate its operations and, absent adherence to the procedures set forth herein, its clients will suffer if NatPEO or another successful bidder is unable to continue servicing them in an uninterrupted fashion. Such a result would irreparably harm the value of the Assets and, by extension, Debtor's creditors. Therefore, to maximize the value received for the Assets, Debtor seeks to consummate the sale of the Assets to the Successful Bidder as soon as possible following the Sale Hearing. Accordingly, Debtor requests that the Court waive the 14-day stay period under Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the proposed sale of the Assets

is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

Given the nature of the relief requested herein, Debtor respectfully requests a waiver of (i) the notice requirements under Rule 6004(a), and (ii) the 14-day stay under Rule 6004(h), to the extent that either rule is applicable.

## CONCLUSION

Wherefore Debtor respectfully requests that the Court enter the Sale Procedures Order, and after notice and the Sale Hearing, enter an order granting the remaining relief requested in this Motion.

**NOTICE IS HEREBY GIVEN** pursuant to Rule 9022-1(b), Arizona Local Rules of Bankruptcy Procedure, Debtor has lodged the attached "Order Setting Procedures for Notice, Bidding, Objections, & Sale of Assets, and Assumption & Assignment of Contracts" this 9th day of October, 2014.

DATED this 9th day of October, 2014.

**ANDANTE LAW GROUP, PLLC**

By: */s/ Joseph E. Cotterman*
Joseph E. Cotterman
Fay M. Waldo
*Attorneys for HR Betty, LLC*

This is to certify that the foregoing was e-filed on October 9, 2014 in the United States Bankruptcy Court,

…and **COPIES** served the same day via ECF Notice and electronic mail as follows:

| Patty Chan | Jonathan Frutkin | |
| Office of the U.S. Trustee | National PEO, LLC | |
| patty.chan@usdoj.gov | jfrutkin@frutkinlaw.com | |

…and **COPIES** served the 9th day of
October, 2014 via U.S. Mail as follows:

| | | |
|---|---|---|
| Amtrust North America, Inc.<br>1400 Fifth Third Center<br>600 Superior Avenue East<br>Cleveland, OH 44114-2652 | Alan C. Hochheiser, Esq.<br>Buckley King LPA<br>1400 Fifth Third Center<br>600 Superior Avenue East<br>Cleveland, OH 44114-2652 | AZ Dept. of Economic Security<br>Unemployment Tax, 911B<br>P.O. Box 6028<br>Phoenix, AZ 85005-6028 |
| Arizona Department of Revenue<br>Unclaimed Property Unit<br>1600 W. Monroe<br>Division Code 10<br>Phoenix, AZ 85007 | Arizona Department of Revenue<br>P.O. Box 29085<br>Phoenix, AZ 85038-9085 | DES-Unemployment Tax<br>P.O. Box 52027<br>Phoenix, AZ 85072-2027 |
| Infinicom, Inc.<br>10491 Old Placerville Rd.<br>Sacramento, CA 95827 | Internal Revenue Service<br>4041 N. Central Avenue<br>Phoenix, AZ 85012 | NM Taxation and Revenue Dept.<br>P.O. Box 25128<br>Santa Fe, NM 87504-5128 |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Internal Revenue Service<br>2970 Market Street<br>Mail Stop 5-Q30.133<br>Philadelphia, PA 19104-5016 | U.S. Attorney's Office<br>40 N. Central, Suite 1200<br>Phoenix , AZ 85004-4408 |
| U.S. Attorney's Office<br>405 W. Congress, Suite 4800<br>Tucson, AZ 85701 | Attorney General's Office<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | |

By: */s/ Kara Gibson Schrader*

# EXHIBIT "A"

## AGREEMENT FOR PURCHASE AND SALE
## OF BUSINESS ASSETS

This Agreement ("Agreement"), dated September 21, 2014, is executed by and between HR BETTY, INC., an Arizona corporation ("Seller") and NATIONAL PEO, LLC, an Arizona limited liability company ("Purchaser").

## RECITALS

A.      Seller now owns and operates a business, known as HR Betty, located at 5055 N. 12th St., Suite 100, Phoenix, AZ 85014 ("Business").

B.      Seller desires to sell the Business to Purchaser and Purchaser desires to acquire the Business from Seller, consisting of all of the assets, property, rights, and goodwill, as described in this Agreement, and on the terms and conditions herein set forth.

## AGREEMENT

1.      __Purchase and Sale of Assets.__   At the Closing, as defined below, Seller will sell, transfer, convey, and deliver to Purchaser, and Purchaser will purchase from Seller, all of Seller's right, title, and interest in and to the following properties, assets, and rights related to the Business and existing as of the Closing Date (the "Assets"):

a. All furniture, equipment, machinery, computers, and other tangible personal property used or held in the Business;

b.   All accounts receivable and notes receivable, including refunds and/or rebates due to Seller;

c.   The customer list set forth on Schedule 1;

d. All names, logos, customer data and other information relating to the continuing operation of the Business, and any other intellectual property used primarily in or associated with the Business;

e.   All of Seller's goodwill, including telephone numbers, fax numbers, domain names, websites, software licenses, business records, and correspondence with clients;

278222.5

f. All books and records maintained in connection with the conduct of the Business, including technical support and other information pertaining to the business;

g. All other Assets of Seller incident to or necessary for the conduct of the business, free and clear of all liens and liabilities.

Purchaser does not, by virtue of this Agreement or otherwise, assume to become or be liable for, or to pay, any indebtedness incurred by Seller, all of which will be retained as liabilities of the Seller.

2.    <u>Purchase Price.</u>   The purchase price will be equal to $25,000, payable at Closing.

3.    <u>Actions Pending the Closing.</u>   During the period beginning on January 1, 2014, and ending on the date of the Closing, and subject to approval of the United States Bankruptcy Court in Case Number 14-13035 (the "HR Betty Chapter 11"), Purchaser will have the right to utilize the Assets to be purchased and sold in the conduct of the business pursuant to the Payroll Servicing Agreement as amended from time to time.

4.    <u>Closing.</u>   The closing of the within transaction will occur at a date and time designated by the Purchaser, following the entry of a final, non-appealable order by the Bankruptcy Court for the District of Arizona in the HR Betty Chapter 11 approving this transaction.

a. <u>Seller's Deliveries Prior to Closing.</u> Upon execution of this Agreement (and in part, in connection with the Payroll Servicing Agreement), Seller will deliver to Purchaser all keys, passwords and other information needed to provide complete access to the Assets.

b. <u>Upon Closing.</u> At the time of the closing, Seller will execute and deliver to Purchaser a bill of sale, as well as such Agreements and other instruments as may be necessary to transfer to the Purchaser the business and property referred to in Paragraph <u>1.</u>, and will deliver possession of all of the Assets to Purchaser.

5.    <u>Seller's Liabilities; Indemnification of Purchaser.</u> Seller acknowledges and agrees that Purchaser is not assuming, and will not be liable for, any liabilities of Seller of any nature whatsoever. Seller hereby agrees to indemnify Purchaser, and hold Purchaser harmless, from and against any claims, actions, demands, losses, costs, expenses, liabilities, fines, taxes, penalties, and/or damages, including counsel fees incurred in attempting to avoid the same or oppose the imposition thereof,   arising

278222.5

out of Seller's conduct of the Business prior to the date of the Payroll Servicing Agreement,or arising from Seller's sale of the Assets hereunder.

6. <u>Representations and Warranties of Seller.</u> Seller hereby represents and warrants all of the following to the Purchaser, which representations and warranties will survive the Closing and the transfer of Assets hereunder:

a. The Seller is a limited liability company duly formed, validly existing, and in good standing under the laws of the State of Arizona.

b. The execution, delivery, and consummation of the transactions contemplated by this Agreement by Seller, including without limitation the sale, conveyance, transfer, and delivery of the Assets contemplated hereby, have been duly authorized by all necessary company action of Seller.

c. The Seller has complied with all laws, and lawful rules and regulations, relating to   the Assets being purchased and sold hereunder.

d. The condition, utility, and quality of the Assets being purchased and sold hereunder are sufficient for all purposes required for the conduct of the Business.

e. There are no liabilities, proceedings, judgments, or liens against the business, in effect or pending against the business and the Assets being purchased and sold hereunder, except as have been   scheduled in the HR Betty Chapter 11.

f. Any and all financial information, operating information, documentation and other items pertaining to the conduct of Seller's business and supplied to Purchaser are accurate and complete to the best of Seller's knowledge and ability.

g. Damages accruing to Purchaser as a result of the breach of any one or more of the aforesaid warranties will be an offset to payments of the purchase price. If same cannot be recovered by such offsets, said damages will be promptly paid by Seller to Purchaser.

7. <u>Representations and Warranties of Purchaser.</u>

a. Purchaser warrants and represents to Seller that Purchaser is an Arizona limited liability company, duly formed, validly existing, and in good standing under the laws of the state of Arizona.

278222.5

b. Purchaser has the power to execute and deliver this Agreement and to consummate the transactions contemplated hereby, pursuant to a resolution executed by its Members.

8. **Covenants of Seller.** Seller agrees that at all times from the date of this Agreement through the Closing Date:

a. Seller will not take or suffer or permit any action, occurrence, or event that would render untrue any of the representations or warranties of Seller contained herein, and Seller will not omit to take any action, the omission of which would render untrue any such representation or warranty.

b. Seller will use its best efforts to (i) preserve intact the Assets; and (ii) preserve the present goodwill and advantageous relationships of Seller with all persons having business dealings with Seller.

c.

d. Seller will use its commercially reasonable efforts to obtain all consents and approvals of other persons, including but not limited to the approval of the United States Bankruptcy Court in the HR Betty Chapter 11, necessary for the performance by it of the transaction contemplated by this Agreement.

9. **Risk of Loss.** If any tangible Assets are substantially damaged or destroyed prior to the Closing, then Purchaser may, at Purchaser's option, (i) elect to continue this Agreement in full force and effect, in which case Seller will forthwith assign to Purchaser all rights of Seller to the insurance recovery due by reason of said damage and the purchase price will be reduced by the amount of the deductible amounts under any applicable insurance policies; or (ii) elect to rescind and void this Agreement, and thereupon there will be returned to Purchaser all money, papers or documents deposited by Purchaser, and there will be returned to Seller all papers or documents, if any, deposited by Seller.

10. **Conditions Precedent to Obligations of Purchaser.** The obligations of Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction or, if permitted by applicable law, waiver by Purchaser, as applicable, of the following conditions:

a. The representations and warranties of Seller contained herein will be true, complete, and correct on and as of the Closing Date with the same effect as though such representations and warranties had been made on and as of such date.

278222.5

b. All necessary corporate action on the part of Seller approving this Agreement and approving the transactions contemplated hereby will have been taken.

c. Purchaser will have received from Seller a Bill of Sale executed by a duly appointed officer of Seller.

d. The representations and warranties of Purchaser contained herein will be true, complete, and correct on and as of the Closing Date, with the same effect as though such representations and warranties had been made on and as of such date.

11. <u>Obligations of Both Parties.</u>

a. The Parties will cooperate with each other with respect to the defense of any claims or litigation made or commenced by third parties subsequent to the Closing Date that are not subject to the indemnification provisions contained in this Agreement.

b. The Parties will execute such further documents and perform such further acts as may be necessary to consummate the transactions contemplated herein on the terms herein contained and to otherwise comply with the terms of this Agreement.

12. <u>Indemnification.</u>

a. The term "Damages" as used in this Agreement means all actual damages suffered or incurred by a party indemnified herein, including any and all damages, losses, liabilities (absolute and contingent), fines, penalties, costs, and expenses (including, without limitation, reasonable counsel fees, and expenses) incurred in the investigation, defense, or settlement with respect to or arising out of any demand, claim, inquiry, investigation, proceeding, action, or cause of action that any such indemnitee may suffer or incur.

b. Seller will indemnify, defend, and hold harmless Purchaser and each of its officers, managers, members, agents, employees, representatives, and affiliates (each a "Purchaser Indemnified Party") for, from, and against, and in respect of any Damages suffered or incurred by a Purchaser Indemnified Party by reason of: (i) any breach of a representation or warranty made by Seller and contained herein; (ii) any failure of Seller to fulfill or perform any covenant, agreement, or obligation of Seller contained herein; and (iii) any liability for taxes relating to Seller or the Assets prior to the Closing Date.

c. Purchaser, will indemnify, defend, and hold harmless Seller and its members, managers, officers, directors, agents, employees, representatives, and

278222.5

affiliates (each a "Seller Indemnified Party") for, from, and against, and in respect of any Damages suffered or incurred by a Seller Indemnified Party by reason of: (i) any breach of a representation or warranty made by Purchaser and contained herein; or (ii) any failure of Purchaser to fulfill or perform any covenant, agreement, or obligation of Purchaser contained herein.

d.  Promptly upon receipt of notice of any claim, demand, or assessment or the commencement of any suit, action, or proceeding with respect to which indemnity may be sought pursuant to this Agreement, the Party seeking to be indemnified or held harmless (the "Indemnitee") will notify in writing, if possible, within sufficient time to respond to such claim or answer or otherwise plead in such action, the Party from whom indemnification is sought (the "Indemnitor"). In case any claim, demand, or assessment will be asserted, or suit, action, or proceeding commenced against Indemnitee, Indemnitor will be entitled, at Indemnitor's expense, to participate therein, and, to the extent that it may wish, to assume the defense, conduct, or settlement thereof, with counsel satisfactory to Indemnitee, whose consent to the selection of counsel will not be unreasonably withheld or delayed, provided that Indemnitor confirms to Indemnitee that it is a claim to which its rights of indemnification apply. If Indemnitor decides not to participate, Indemnitee will be entitled, at Indemnitor's expense, to defend, conduct, settle, or compromise such matter with counsel satisfactory to the Indemnitor, whose consent to the selection of counsel will not be unreasonably withheld or delayed.

13.  No Assignment.  Neither Seller nor Purchaser may assign its respective rights or obligations in this Agreement without the prior written consent of the other Parties, which consent will be in the sole discretion of such other Parties. This Agreement will be binding upon and will inure to the benefit of the Parties, their successors and permitted assigns, and no person, firm, or corporation other than the Parties, their successors and assigns, will acquire or have any rights under this Agreement.

14.  Restrictive Covenants.

a.  For a period that begins on the date on which the Purchaser assumes control of the Assets, and continues until the second (2nd) anniversary of the Closing Date, or, in the alternative, in the event any reviewing court finds two years to be overbroad in duration and unenforceable, for the period of that begins on the Closing Date and continues until the first (1st) anniversary of the Closing Date ("Restricted Period"), neither Seller, its members, nor any of their successors or assigns ("Seller Restricted Parties"), will in Arizona, directly or indirectly invest in, own, manage, operate, finance, control, advise, consult, render services to, or guarantee the

278222.5

obligations of any person or entity (other than Purchaser) engaged in an endeavor the same as or similar to the Business, provided, however, that Seller Restricted Parties may purchase or otherwise acquire up to (but not more than) five percent (5%) of any class of the securities of any entity if such securities are listed on any national or regional securities exchange or have been registered under Section 12 of the Exchange Act.

b.    During the Restricted Period, Seller may not, directly or indirectly (i) solicit the business of any person or entity that was a customer of the Business prior to the Closing Date, other than in connection with Purchaser's operation of the Business; (ii) cause, induce, or attempt to cause or induce any customer, supplier, licensee, licensor, franchisee, employee, consultant, or other business relation of Purchaser to cease doing business with Purchaser or to deal with any competitor of Purchaser; (iii) cause, induce, or attempt to cause or induce any customer, supplier, licensee, licensor, franchisee, employee, consultant, or other business relation of the Business on the Closing Date or within the year preceding the Closing Date to cease doing business with Purchaser or to deal with any competitor of Purchaser; or (iv) solicit the employment of any employee or independent contractor of Purchaser with the intention of causing such employee or independent contractor to terminate the employment or independent contractor relationship with Purchaser.

15.    <u>Attorneys' Fees.</u>  If either party becomes a party to any litigation or other proceeding concerning this Agreement, by reason of any act or omission of the other party or its authorized representatives, and not by any act or omission of the party that becomes a party to that litigation or other proceeding or any act of omission of its authorized representatives, the party that causes the other party to become involved in the litigation or other proceeding will be liable to that party for reasonable attorneys' fees and court costs incurred by it in the litigation, as may be awarded by a court of competent jurisdiction. If either party commences an action against the other party arising out of or in connection with this Agreement, the prevailing party will be entitled to recover from the losing party reasonable attorneys' fees and costs of suit.

16.    <u>Additional Terms</u>

a.    <u>Proprietary Information.</u>  As a result of Purchaser's investigations prior to the close of the transaction contemplated by this Agreement, Purchaser may become aware of certain information pertaining to Seller's business. Purchaser agrees that all information regarding Seller's prices, costs, methods of operation and customers is confidential information proprietary to Seller, and if the transaction contemplated by

this Agreement does not close, Purchaser will have no right to assert any proprietary interest in such information. In such instance, Purchaser agrees that it will not, at any time following the date of this Agreement, disclose or divulge, directly or indirectly, to any person or entity any trade secret, formula, procedure or know-how related to the business of Seller or any of Seller's confidential information. Purchaser acknowledges and agrees that a violation of this restrictive covenant will cause irreparable harm to Seller, and that Seller will be entitled to specific performance of this provision or an injunction without proof of special damages, together with the costs and reasonable attorneys' fees incurred by Seller in enforcing its rights under this paragraph.

     **b.**    <u>Inspection of Books</u>.  At any time up to the date of closing, Purchaser will have the right, either alone or with a public accountant or certified public accountant, to examine the books of account and business records of Seller.

     **c.**    <u>Compliance by Purchaser.</u>  Purchaser will be responsible for obtaining all necessary licenses and permits necessary to continue to operate the business, and will comply in full with all governmental, quasi-governmental and other applicable rules and regulations.

     **d.**    <u>Notices.</u>  All notices and other communications required or permitted under this Agreement will be in writing and will be deemed duly given, made, and received (a) upon confirmation of a receipt of a facsimile transmission or email; (b) if hand delivered, upon delivery or upon refusal; or (c) if delivered by a standard overnight courier, one business day after deposit with such courier, postage prepaid, addressed as set forth below or at any other address or email address designated by the Parties in writing.

| If to Seller: | If to Purchaser: |
|---|---|
| Nick Smith, President | Kevin Steele, C.O.O. |
| 5055 N. 12th Street, Suite 100 | 4800 N. Scottsdale Road, Suite 2000 |
| Phoenix, AZ 85014 | Scottsdale, AZ 85251 |
| Attention: | Attention: |
| e-mail: nick@hrbetty.com | E-mail: ksteele@nationalpeo.com |
| | |
| with a copy to: | with a copy to: |
| | |
| Joseph E. Cotterman | Jonathan Frutkin |
| Andante Law Group | The Frutkin Law Firm, PLC |

278222.5

4110 N. Scottsdale Road
Suite 330
Scottsdale, Arizona 85251
Email: joe@andantelaw.com

15205 N. Kierland Blvd, Suite 200,
Scottsdale, AZ 85254
Email: jfrutkin@frutkinlaw.com

    e.    <u>Purchaser's Assignment.</u>  Purchaser will not voluntarily assign, encumber of otherwise dispose of its interest in this Agreement, in the Business, or in the Assets that are the subject to this transaction, or allow any other person or entity to occupy or use all or any part of the business or Assets, without first obtaining Seller's written consent prior to the payment of the purchase price in whole. Any assignment, encumbrance or other disposition without Seller's written consent will be voidable and, at Seller's election, will constitute a default. No consent to any assignment or encumbrance will constitute a further waiver of the provision of this paragraph.

    f.    <u>Seller's Assignment.</u>  Seller may not assign any or all of its rights contained in this Agreement.

    g.    <u>Binding Effect.</u> This Agreement will bind the parties hereto, their legal representatives, successors, and assigns.

    h.    <u>Choice of Law and Venue.</u>  This Agreement and all transactions contemplated hereby will be governed by, and construed and enforced in accordance with, the laws of the state of Arizona, without regard to any state's laws related to choice or conflict of laws. The Parties irrevocably agree and consent to the jurisdiction of the courts of the state of Arizona and the federal courts of the United States sitting in Maricopa County, Arizona for the adjudication of any matters arising under, or in connection with, this Agreement.

    i.    <u>Entire Agreement.</u>  This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof, and it may not be changed except by a written document signed by all parties hereto.

    j.    <u>Severability.</u>  The unenforceability, invalidity, or illegality of any provision of this Agreement will not render the other provisions unenforceable, invalid, or illegal.

278222.5

**k.** **Exhibits.** All Exhibits referenced in this Agreement will be deemed incorporated into the Agreement and made a part hereof.

**l.** **Counterparts.** This Agreement may be executed in two (2) or more identical counterpart copies, which, when at least one (1) of said copies has been signed by each of the parties, will constitute the complete and binding contract of the parties.

**m.** **Successors and Assigns.** This Agreement will be binding upon the parties hereto, their heirs, administrators, executors, and assigns; and the parties do covenant and agree to execute any and all instruments, releases, assignment, consents, and other documents and instruments that may be required of them in accordance with the provisions of this Agreement.

**n.** **Costs, Fees, Brokers.** Seller and Purchaser each will be responsible for their respective costs and expenses incurred in connection with the negotiation and consummation of the transaction contemplated herein. There are no real estate or other brokers involved in this transaction due an commission or payments with respect to this transaction.

**o.** **Right to, and Opinion of, Counsel.** Each Party represents that they have had this Agreement reviewed by their respective Counsel.

**p.** **Confidentiality.** The Parties agree to keep the terms of this Agreement confidential, disclosing said terms only to Legal Counsel, Accountants or authorized representatives of their respective entities, except as may be required to obtain the approval of this Agreement in the HR Betty Chapter 11, or as otherwise required by law.

**q.** **Taxes and Fees.** Each Party will be responsible for and will pay all of its applicable sales, use, transaction privilege, or similar taxes or governmental charges, if any, with respect to the sale and purchase of the Assets, whether levied against the Assets or Seller. Further, each Party will bear its own expenses in connection with the transactions contemplated by this Agreement, including without limitation legal fees.

**17.** **Break-up Provision.** In the event the Seller closes on an alternate transaction, as defined as the sale of any of its assets to a party other than the Purchaser within 12 months of the date of this Agreement, Seller agrees to pay Purchaser $125,000, which the parties agree is the total amount of out-of-pocket expense spent by Purchaser in contemplation of this Agreement. The parties agree that the Purchaser does not need to

provide any further accounting related to the actual out-of-pocket expense. The Seller further acknowledges that without the Purchaser's financial assistance, the Business would have failed.

278222.5

IN WITNESS WHEREOF, this Agreement is entered into as of the date set forth above.

PURCHASER:

National PEO, LLC, an Arizona limited liability company,

By: _____

Hooman Nikzad, Managing Member


SELLER:

HR Betty, LLC, an Arizona limited liability company,

By: _____

Nick Smith, President

278222.5

# EXHIBIT "B"

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 11 |
| HR BETTY, LLC, an Arizona limited liability company, | Case No.:  2:14-bk-13035-BKM |
| Debtor. | ORDER SETTING PROCEDURES FOR NOTICE, BIDDING, OBJECTIONS, & SALE OF ASSETS, AND ASSUMPTION & ASSIGNMENT OF CONTRACTS |

This matter came before the Court on Debtor's *Motion to: 1) Sell Assets Free & Clear of Liens—Subject to Higher & Better Offers, 2) Assume & Assign Contracts, 3) Set Notice, Bid, & Sale Procedures, and 4) Set Sale Hearing Pursuant to 11 U.S.C. §363* (the "Motion"). Having discussed the potential sale and need for expedited consideration at the hearing held [    ], having reviewed the Motion, and good cause appearing,

**The Court Hereby Finds that:**

1.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), this Court may enter a final order consistent with Article III of the United States Constitution, and venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

2.   Debtor's notice of the Motion as set forth in its certificate of mailing was appropriate;

3.   The relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and there is a factual and legal basis in the record establishing just cause for the relief granted herein;

4.   The Debtors have demonstrated that, under the circumstances described herein and in

the Motion, there is sound business justification for this Court to grant the relief requested in the Motion;

5.   The bidding procedures and overbid increments set forth herein are fair, reasonable, appropriate, and represent the best method for maximizing the value of Debtor's estate; and

6.   The notice procedures set forth herein are appropriate and reasonably calculated to provide all interested parties, including potential bidders, with timely and proper notice of the sale of the Assets, the bid procedures, and the Sale Hearing and no other or further notice is required.

**The Court Hereby Orders the following**:

1.   **Sale Hearing**: A hearing shall be held at 230 N. First Avenue, Courtroom ___, in Phoenix, Arizona on _____, 2014, at which Debtor will conduct an auction of the Assets and the Court may consider the NatPEO Bid and any higher and better offers that may be made at the hearing.

     a.   Assets to be sold, as set forth in more detail in the Motion, are as follows: all of Debtor's FF&E and other tangible personal property; Debtor's accounts receivable; by assignment, Debtor's Client Contracts; Debtor's trademarks, logos, customer data and intellectual property; Debtor's goodwill and proprietary information; Debtor's books and records; Debtor's other Assets incident to or necessary for the conduct of Debtor's business.

2.   **Notice**: Debtors will provide notice of this Order to:

     a.   All creditors;

     b.   Any party requesting notice in this case;

     c.   the United States Trustee;

     d.   any party that has expressed an interest in acquiring the Assets; and

     e.   all competitors in the Phoenix marketplace in Debtor's industry who are, in Debtor's experience, likely potential bidders.

3.   **Objection Deadline**: Any and all objections to the Motion, including but not limited to the NatPEO Bid, assumption and assignment of Client Contracts, or NatPEO's ability to perform under the Client Contracts must be filed no later than Fourteen (14) days after service of the Motion

(the "Objection Deadline").

4. **Objection Content:** Objections must set forth the basis for the objection as well as any cure amount that the objector asserts to be due, and provide appropriate documentation in support of such objection.

5. **Results of Lack of Objections**: If a party fails to timely file an objection to the Motion or any portion thereof, that party is barred from voicing objections at the Sale Hearing and is deemed to have consented to all provision in the Motion including but not limited to notice, timing, assumption and assignment of Client Contracts and sale of the Assets to NatPEO or the winning bidder at the Sale Hearing. If a party files a timely objection to one provision of the Motion, said party is likewise barred from voicing objections to any other provision of the Motion and is deemed to have consented to all such other provisions.

To the extent that any entity does not timely object as set forth above, such entity shall be (i) forever barred from objecting to assumption and assignment of the Client Contracts, (ii) deemed to have consented to the assumption and assignment of the applicable Client Contract, (iii) deemed to have agreed that NatPEO has provided adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b)(1)(C), (iv) deemed to have agreed that all defaults under the applicable Client Contract arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the winning bidder (whomever that may be) or Debtor shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Client Contract shall remain in full force and effect for the benefit of the winning bidder and such entity in accordance with its terms, and (v) deemed to have waived any right to terminate the applicable Client Contract as a result of any default that occurred and/or was continuing prior to the assignment date.

If no objection to the proposed assumption and assignment of a Client Contract is received by the Objection Deadline, Debtor's counsel may submit to the Court a certificate of no objection and a form of order (a "***Certificate of No Objection***") granting such assumption and assignment, and serve such Certificate of No Objection on the counterparty to such Client Contract. If an

objection is timely received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale hearing. The pendency of a dispute relating to a Cure Amount will not prevent or delay the assumption and assignment of any Client Contract. If an objection is filed only with respect to a Cure Amount Debtor may file a Certificate of No Objection as to assumption and assignment only and the dispute with respect to the Cure Amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court at the Sale Hearing.

6. **Auction**: Debtor and its professionals will direct and preside over the auction at the Sale Hearing. Debtor shall maintain a record of all bids made and announced at the Sale Hearing. Debtor may request as many recesses as are necessary during the auction in order to resolve objections, consider information presented by bidders, or any other reason that will facilitate completing the sale at the Sale Hearing.

7. **Stalking Horse Bid:** The NatPEO Bid, as set forth in the Motion, shall be the opening bid at the auction. NatPEO's Purchase Price is $25,000 total to be offset by the amount of advances under any Court-approved DIP funding NatPEO provides to Debtor in this case.

8. **Adequate Assurance of Future Performance from NatPEO:** Any request for adequate assurance information regarding NatPEO must be submitted in writing and served via email on Debtor's counsel (joe@andantelaw.com) no later than ten days prior to the Sale Hearing. Such requests must include an email address to which a response will be sent as well as an attestation that any information supplied in response to such request will be kept strictly confidential. Debtor shall reply to such request via email by noon Arizona time no later than five days prior to the Sale Hearing.

9. **Bid Requirements**:

    a.  There will not be a qualifying process and anyone may appear at the Sale Hearing and place a bid;

    b.  Anyone who bids shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale Hearing, and the sale of the Assets.

c.  Overbids must be in increments of at least $5,000;

d.  A bid, once made, must remain open and binding on the bidder until the Sale Hearing is over and a winning bid has been selected;

e.  Bidders are prohibited from requesting bid protections such as break-up fees, termination fees, or expense reimbursement, other than the NatPEO offset described in the Motion;

f.  Debtor may select up to 3 back-up bids, given the lack of time to conduct another auction if the winning bid falls through;

g.  Bidders must provide proof of funds and evidence of adequate assurance of future performance under the Client Contracts at the Sale Hearing (with the exception of NatPEO pursuant to ¶8 above);

h.  Winning bidder must pay the full purchase price within 3 business days of the conclusion of the Sale Hearing;

i.  If the winning bidder is not NatPEO, the winning bidder must sign an asset purchase agreement in substantially the same form as the agreement signed by NatPEO.

10. **Determination of Highest & Best Offer**: This determination shall take into account any factors the Debtor reasonably deems relevant to the value and benefit to the Debtor's estate, including, *inter alia*, the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities, if any, and the impact of the proposed transaction on the amount of claims remaining against the Debtor's estate following consummation; (c) the ability of the bidder to timely close the transaction; (d) the proposed closing date; (e) the likelihood, extent, and impact of any potential delays in closing; (f) any purchase price adjustments; and (g) the ability of the bidder to provide adequate assurance of future performance under any executory contracts proposed to be assumed and assigned, or otherwise obtain any consents necessary for the consummation of the transaction (collectively the "**Bid Criteria**").

11. **Anti-Assignment Provisions**: Pursuant to 11 U.S.C. § 365(f) any anti-assignment provisions included in, or otherwise purporting to affect, the Client Contracts shall not restrict, limit, or prohibit the assumption, assignment, or sale of the Client Contracts.

12. **14-Day Waiting Period Waived**: The notice requirements under Bankruptcy Rule 6004(a) are hereby waived. The 14-day stay under Rule 6004(h) and 6006(d) are hereby waived.

13. **Court Approval**: Once Debtor has selected the highest and best offer, it shall be presented to the Court at the Sale Hearing for approval thereof and authorization to consummate the transaction pursuant to the terms of the winning bid.

14. **Resolution of Objections**: To the extent a timely objection was filed, such objection will either be resolved consensually or ruled upon by the Court at the Sale Hearing.

15. **Sale Order**: As soon as possible after the conclusion of the Sale Hearing, Debtor shall upload an order approving the Motion and setting forth the final terms of the sale as decided at the Sale Hearing.

**ORDERED, SIGNED, AND DATED ABOVE**